## GEO. S. EMERICK v. ROSCOE K. MOIR.

ERROR TO THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY.

Argued February 4, 1889—Decided March 11, 1889.

(*a*) By the terms of a copartnership agreement, one partner was to contribute the whole amount of the capital in cash, against which the other was to apply his skill, judgment, time and attention to the conduct of the business of the firm, each one to receive one half the profits and sustain one half the losses thereof.

(*b*) The partner contributing no capital, was to receive a certain sum per annum, payable monthly, which was to be considered as a portion deducted from his share of the profits, the balance, if any, to be placed to his credit, until the amount so credited should equal the amount of cash capital contributed by the other partner.

1. On a case stated showing the foregoing facts and that, at a period before the end of the term provided for in the agreement, all the capital had been lost and the copartnership dissolved by a decree of court, the partner who contributed the cash capital was entitled to recover the one half thereof from his copartner.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

Statement of Facts.

No. 395 January Term 1888, Sup. Ct.; court below, No. 16 March Term 1888, C. P.

On December 1, 1887, a case stated was filed wherein Roscoe K. Moir was plaintiff and George S. Emerick, defendant, in which it was agreed as follows, to wit:

That on January 1, 1886, Roscoe K. Moir and George S. Emerick entered into articles of copartnership, under the firm name of George S. Emerick & Co., for the purpose of manufacturing and selling foundry facings and supplies, at West Manayunk, the copartnership to continue for the full term of five years. The articles contained the provisions following, to wit:

"It is hereby agreed that the capital of the said partnership shall be the sum of five thousand dollars, to be contributed by the said Roscoe K. Moir, against which the said George S. Emerick shall apply his skill, judgment, time and attention, and prosecute and conduct the business of the said firm, except the financial management and direction of the same.

"The said George S. Emerick is to conduct the buying of the raw materials and machinery, and the manufacture and sale of all goods, using, however, at all times his best skill, judgment and ability, and use his best endeavors for the benefit and advantage of the said firm, and shall not during the continuance thereof, engage in any other business to his private benefit and advantage.

    \*      \*      \*      \*      \*      \*      \*

"The said Roscoe K. Moir and the said George S. Emerick, shall each receive one-half of the profits, and sustain one-half of the losses of the said business, but the said George S. Emerick in consideration of his time, and managing and conducting the said business, is to draw the sum of one thousand dollars per year during the continuance of this copartnership, payable in monthly instalments of eighty-three and .33 dollars, which is to be considered a portion of his profits, and is to be deducted from his share of the profits, and the balance, if any, is to be placed to his credit upon the books of the said firm, at the yearly settlement between the said partners, and so on at the end of each year of the term of this copartnership, until the amount so placed to his credit equals the amount of cash capital contributed by the said Roscoe K. Moir."

    \*      \*      \*      \*      \*      \*      \*      \*

That under said articles the copartnership business was begun and continued until September 20, 1887, when it was dissolved by a decree of court.

That Roscoe K. Moir had contributed the $5,000 as agreed upon, and upon settlement of the copartnership accounts it was found that there had been no profits from the said business, and that the capital contributed by said Roscoe K. Moir had been wholly lost.

That no claim was made by Roscoe K. Moir "under a construction of the articles of copartnership for any liability by George S. Emerick for the amount of salary paid him, as part of the capital lost."

If the court shall be of opinion that said George S. Emerick is liable for one half of said loss of five thousand dollars, then judgment to be entered in favor of said Roscoe K. Moir, and against said George S. Emerick, for twenty-five hundred dollars, otherwise judgment to be rendered for the defendant; costs to follow the judgment, and either party reserving the right to sue out a writ of error or appeal to the Supreme Court.

The question submitted upon the facts above stated was this: "Is George S. Emerick liable to Roscoe K. Moir for a moiety of the $5,000 capital lost in the said business?"

On March 5, 1888, the cause having been argued, the court, SWARTZ, P. J., filed the opinion and decree following, to wit:

The plaintiff and defendant entered into articles of copartnership wherein it was stipulated as follows: . . . . .

Moir furnished the $5,000 capital. The copartnership was to continue for five years, but at the end of one year and nine months all the capital was lost and the partnership was dissolved by proceedings in equity.

Emerick drew from the firm during the continuance of the partnership the monthly allowance mentioned in the articles. No profits were made. Moir now claims that Emerick should pay over to him the sum of $2,500, being a moiety of the capital contributed and lost. Moir makes no claim upon Emerick on account of the moneys drawn out by Emerick. ·

The $5,000 were contributed by Moir as the capital of the partnership. To it was added the "skill, judgment, time and attention" of the other partner. The monthly compensation

drawn by Emerick was not an expenditure of the firm, for it was chargeable against Emerick's share of the profits. If the contemplated profits had been realized, this monthly draft by Emerick could not have diminished Moir's net gain.

The contributions of the partners were money by the one, against the skill and labor of his associate.

The articles contemplate that Emerick in time should also furnish $5,000 as capital. This would seem to be an unfair provision, but as the partners made the agreement it is their contract and not within our province to find fault with it. The contingency, however, did not arise, and we only mention this stipulation as an indication that Emerick was not to enjoy any advantage over his associate, but on the contrary agreed to assume more than his due share of the responsibilities of the business.

Where one partner contributes money against the skill and labor of his associate and no provision is made for a division of the losses, the partner contributing only labor and skill is not required to make up any part of the capital lost in the business: Everly v. Durborrow, 8 Phila. 93; opinion by SHARSWOOD, J. In some states a different rule prevails, and partners under such articles share the loss of capital in the same proportion as the profits are divided.

In the case before us, the partners agreed upon the division of losses. The articles provide they " shall each receive one half of the profits and sustain one half of the losses of the business." They are to share equally the losses in the business. The $5,000 capital was invested in the business, debts were contracted, and to pay these, the plant, machinery, book accounts, and all other assets were swept away. They lost $5,000 in the business; this was a money loss. The defendant claims he is only to share in the losses resulting from bad debts and like misfortunes. These are the very losses he is called upon for contribution; if he pays his share of the losses from bad debts, losses on sales, losses on goods manufactured and losses from kindred misfortunes, the capital will not be impaired. If each partner pays over one half of these business losses, the capital will remain intact.

We must interpret the contract so as to give effect to every provision in it, if possible. There is no loss in said business

so long as the profits exceed the losses from bad debts, other misfortunes or mistakes; there is still a net gain. If Emerick cannot be called upon to contribute for losses, except such as do not affect the capital, then the provision in the articles for a division of the losses is surplusage. The stipulation, as to the profits, would cover the meaning of the parties. The case of Yohe v. Barnet, 3 W. & S. 81, determines this contest against the defendant. . . . . .

Why should Emerick escape from all responsibility? Under this interpretation of the contract, he had nothing to lose in the venture but all to gain. He was paid for his "time and attention," and his "skill and judgment" he still possesses, while Moir lost all.

As we read the articles, Emerick was to contribute and make good half the losses; the firm lost $5,000 in money, of which Emerick must contribute $2,500.

And now, March 5, 1888, judgment is entered in favor of the plaintiff and against the defendant for the sum of twenty-five hundred dollars with costs upon the case stated.

Judgment having been entered, the defendant took this writ, assigning as error:

1. The construction of the articles of copartnership, and the finding as matter of law that the defendant was bound to make good one half the losses of the partnership.

2. The entry of judgment in favor of the plaintiff.

*Mr. Henry C. Boyer* and *Mr. Chas. Lex Smyth*, for the plaintiff in error:

1. The error of the court below lay in not apprehending clearly what constituted the capital of the firm. The capital consisted not merely of $5,000 in money, but of $5,000 in money, or the cash capital, and, in addition, the skill and judgment of Emerick, when that skill was actually applied to the affairs of the firm. It then represented money and money's worth, in an equal degree with coin or currency. In the construction of a written contract, the aim must be to consider it with reference to a reasonable intention of the parties, and not to follow a strict construction which would work inequitable results, if the language of the contract is not inconsistent with an equitable

construction fair to both parties: 2 Whart. on Cont., § 641; Com. Dig., Agreement, C.; Robertson v. French, 4 East 135; Bickford v. Cooper, 41 Pa. 142; Williamson v. McClure, 37 Pa. 402.

2. The court below also erred in considering the fact that Emerick was to receive a salary, as affecting a construction as to what his share of the losses should be, under the other terms of the contract. Nothing in the case stated shows whether Emerick did or did not receive full payment. The clause by which Moir agrees that Emerick shall draw $1,000 per annum, in monthly payments, simply amounts to an agreement that his share of the profits should not be less than $1,000 per annum. Any surplus put to his credit, it is fair to presume, would have been at the risk of the business; but as he was given as a partner no part of the money contributed by Moir, and no part of the assets purchased by that money, he should not be held liable to Moir for the loss of money or assets. The following authorities sustain this contention: Watson on Partnership, 2d ed., 57; Everly v. Durborrow, 8 Phila. 93; Rowland v. Miller, 7 Phila. 362; Hasbrouck v. Childs, Bosw. (N. Y.) 106; Cameron v. Watson, 1 Rich. Eq. 64; Parsons on Partnership, § 48.

*Mr. Amos Briggs* (with him *Mr. David H. Ross*), for the defendant in error:

There is nothing in the copartnership articles which shows that Emerick has an interest in the corpus of the capital beyond its use. The article provides for a division of the profits, but not of the capital in any contingency. Emerick is given $1,000 per annum, even if there should be no profits at all. But if his annual dividend of the profits should equal $1,000 per annum, this sum should be charged to him in the division of the profits; and, if Emerick's portion of the profits should exceed $1,000 per annum, the excess should be funded into capital, belonging exclusively to Emerick, "at the end of each year of the term of this copartnership, until the amount so placed to his credit equals the amount of cash capital contributed by the said Roscoe K. Moir." It is evident from these provisions that upon the dissolution of the copartnership, the cash capital contributed by the partners should be

treated as their respective individual property: Rowland v. Miller, 7 Phila. 362; Story on Partnership, § 27; Carlisle v. Tenbrook, 57 Ind. 529.

OPINION, MR. JUSTICE GREEN:

We see no difficulty in this case. The partnership agreement expressly stipulates that each partner shall receive one half of the profits and sustain one half of the losses of the business. There were no profits to divide, but there was a loss of $5,000 in money. In point of fact Moir has paid the whole of this loss, because he is the only person who contributed any money to the firm, and all the money has been lost. Emerick has paid no part of the loss. He contributed his skill and labor, as he agreed to do, but for this he was entitled to be paid $1,000 per year. If there had been profits in excess of this, sufficient to enable him to contribute $5,000 in money out of his share of those profits, he was bound to do so. But this was never done. The business only continued for one year and nine months, and Emerick never performed his part of the agreement by contributing his skill and labor for five years, as he had agreed to do. There was no equality therefore in the performance of the terms of the partnership by the two partners, so far as the question of contribution is concerned. Moir performed the whole of his part, and Emerick performed none of his, in the matter of raising capital. His actual service was paid for during the time it was rendered, by force of the agreement that it should be paid. Whether it was actually paid is immaterial in the mere interpretation of the contract. It was his right to have it, and that is sufficient. In actual result, therefore, the firm lost $5,000 in money while engaged in business, and the whole of this has been paid by Moir. Emerick agreed to pay half the losses and he has paid none. Clearly he must pay it in this action if the contract is to be enforced. The case of Yohe v. Barnet, 3 W. & S. 81, is entirely in point. There, two of the partners contributed money and the third contributed nothing but service. It was not clear under the written and unsigned memorandum what he was to contribute, but it was perfectly clear that the profits and losses were to be equally divided, and we held he was bound to pay his share of the losses. In delivering the opinion KENNEDY, J.,

said: "Now it must be observed here that the profits and losses are coupled together and to be shared in like manner. That the profits, if they consisted of money, were to be divided and shared in money equally between the three will not, I think, be denied; and why shall not the losses, if they consist of money, be divided and shared equally also in like manner, that is, in money, between the three?" The theory that Emerick is to be exonerated from all liability for the losses, because he agreed to contribute skill and labor as against capital, is entirely untenable in view of the facts of the case. He never made the contribution. Even if he had done so, however, for the whole five years, that alone would not have been sufficient, under the agreement, to equalize him with Moir, unless there were profits enough actually realized to his share to produce the same money contribution that was made by Moir. We think the learned court below was entirely right in entering judgment for the plaintiff on the case stated.

Judgment affirmed.